STATE of Missouri, Respondent,

v.

Maynard HURLEY, a/k/a Donzell Biggs, Appellant.

No. WD 31013.

Missouri Court of Appeals, Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 4, 1980.

Application to Transfer Denied Sept. 9, 1980.

Clifford A. Cohen, Public Defender, Gary L. Gardner and Kevin R. Locke, Asst. Public Defenders, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Maynard Hurley was convicted after jury trial of murder in the second degree and the jury assessed punishment at 150 years imprisonment. Sections 559.020 and 559.030, RSMo 1969.

On this appeal Hurley contends the court erred in admitting certain pictures in evidence which had been referred to as "mug shots" because this was evidence of unrelated crimes, and in allowing the jury to assess punishment after the jury first returned with a verdict for an indeterminate sentence. Affirmed.

Hurley does not question the sufficiency of the evidence. Briefly stated, Hurley and Michael Nunn went to Sam Aaron's store in

Kansas City to sell some stained glass. While there Aaron offered Hurley a job which he accepted. Hurley worked that day and returned to work the following day. Nunn testified that Hurley told him that Aaron had a lot of money and could easily be set up for a robbery. Aaron was found dead in his store on the second day Hurley worked there. Nunn testified that Hurley told him that he had killed Aaron after Aaron had put up a fight. Nunn further testified that Hurley had a large amount of cash and caught a bus to California the next day.

The State presented an investigator from the prosecutor's office as one of its witnesses. This witness stated that he had shown some witnesses eight "mug shots" which he had picked out of his file. Hurley's counsel immediately objected and moved for a mistrial. The court instructed the witness not to use the term "mug shots," found no prejudice had resulted, and overruled the motion for a mistrial. At that time counsel agreed that his objection might have been premature because no mention was made of Hurley being in any of the pictures. Later, eight pictures were marked and introduced in evidence. It may be fairly inferred from the record that the particular pictures introduced in evidence were the same eight pictures which the investigator had referred to as "mug shots." Hurley was later identified as being in two of the pictures.

In his first point Hurley contends the court erred in refusing to declare a mistrial when the investigator referred to the pictures as "mug shots" and in admitting these pictures in evidence without the information shown thereon having been obliterated. The pictures contained dates and information indicating they were taken by the Kansas City Police Department.

The pictures were not again referred to as "mug shots" after the first mention and the court's instruction to the witness, and when the pictures were introduced in evidence the prosecutor stated that he did not intend to show the pictures to the jury. However, the pictures were shown to a witness and Hurley's counsel objected that the jury could see the pictures but the court observed that because of the distance the pictures were from the jury and their size, the court did not find any prejudice could result because all the jury could tell was that there were pictures being examined. The record does not show that the pictures were ever shown to the jury.

Hurley's objection to the investigator characterizing the pictures as "mug shots" is on the basis that this conveyed the information to the jury of previous criminal activity on the part of Hurley. Likewise, his objection to the introduction of the pictures in evidence is that information on the pictures would convey to the jury that Hurley had previous arrests or convictions.

Hurley took the stand and testified in his own behalf. One of the first things elicited by his counsel was the fact that he had been convicted of bank robbery and of two counts of armed robbery. In *State v. Teegarden*, 559 S.W.2d 618, 621 (Mo.App. 1977) this court held that when an objection was made to an exhibit which would show the previous conviction of Teegarden, the admission of Teegarden on the stand of such previous conviction "reached back and wiped the purported basis of his motion for a mistrial clean of any prejudice." So here, the admission of Hurley of his previous conviction would wipe the slate clean of any prejudice which could possibly have been associated with the complaints he makes. Furthermore the fact that the pictures were never shown to the jury meant the information on the pictures never reached the jury so no prejudice could result from information never acquired by the jury.

Hurley next contends the court erred in not fixing punishment because the jury assessed an indeterminate sentence. The jury first returned a verdict finding Hurley guilty of murder in the second degree and assessing punishment at "not less than 150 years or more than life imprisonment." The court examined the verdict and told the jury that it could not accept the verdict because it was not in proper form. The court then returned the jury to its room with all of its instructions and with new

verdict forms which allowed the jury to find Hurley guilty of murder in the second degree, manslaughter, or not guilty. The jury later returned with a verdict finding Hurley guilty of murder in the second degree and assessing his punishment at 150 years. The court accepted this verdict and later pronounced sentence upon him.

Hurley now contends that under *State v. Starks*, 459 S.W.2d 249 (Mo.1970) and under Rule 27.03, in effect in May, 1979, the first verdict amounted to an unauthorized punishment being assessed by the jury and the court was thereby required to assess punishment. In *Starks* the complaint made was that the court accepted a jury verdict which assessed an indeterminate sentence. Here the court did not accept the original verdict which contained an indeterminate sentence. Rather, the court in this case followed the procedure in *State v. Wood*, 199 S.W.2d 396, 398[5][6] (Mo.1947). In *Wood* the jury returned a verdict with a recommendation for clemency and the court informed them the verdict was not in proper form and told them to continue their deliberation. They later brought in a verdict in proper form. The court stated at 398[6]: "The action of the trial court in this regard was entirely proper. The court not only may but should see that verdicts are in proper form."

Here the trial court did not accept an improper verdict but required them to return a verdict in proper form. Thus the jury, in fact, never assessed a punishment not authorized by law as provided in Rule 27.03 because the court never accepted a verdict of that type. The only verdict accepted by the court was in proper form. Under *Wood* the court was correct in requiring the jury to deliberate further and return a verdict in proper form.

The judgment is affirmed.

All concur.