**STATE of Missouri, Respondent,**

v.

**James William GORDON, Appellant.**

**No. WD 34085.**

Missouri Court of Appeals,
Western District.

July 19, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 30, 1983.

John R. Swenson, Barton & Waltz, Jefferson City, for appellant.

Thomas J. Brown, III, Pros. Atty., Cole County, Richard G. Callahan, Jefferson City, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

CLARK, Judge.

James William Gordon was tried before a jury and convicted of the misdemeanor offense of indecent exposure. On this appeal, he presents claims of error (a) in the content of the verdict, (b) in the receipt of identification evidence generated by an illegal arrest, and (c) in the ineffective assistance rendered by appointed trial counsel.

The incident out of which the charge arose was alleged to have occurred in the parking area of a shopping center. According to the prosecuting witness, one Bolton, as she returned to her automobile she was greeted by Gordon who was seated in his car in the next parking space. Bolton did not know Gordon and had not seen him previously. Gordon was naked below the waist engaging in an act of masturbation. Bolton entered her vehicle, but before leaving the parking area, she recorded the license plate number of the car occupied by Gordon. This information she gave to the police and the same evening, Gordon was arrested at his home. Bolton identified Gordon in a show up and the present charge was filed.

The errors contended to have occurred and addressed in each of the points presented by Gordon on this appeal were not preserved at the trial level for review because objections were not lodged in the course of trial and the points were not set out in the motion for new trial. We therefore limit our consideration to the errors in the context of manifest injustice or miscarriage of justice. Rule 30.20.

■ Gordon first asserts that the court should not have accepted the jury verdict which was defective in form. The verdict read as follows:

"We, the jury, find defendant, James William Gordon, guilty of indecent exposure as submitted in instruction no. 6. We assess and declare punishment at 30 days in the county jail subject to probation providing he will agree to seek professional help."

Appellant construes the verdict to evidence an intention on the part of the jury to coerce Gordon into seeking the aid of professional consultation, else he would be obligated to serve the 30 days confinement. From this he argues that if the jury knew the sentence would be imposed irrespective

of any consent by Gordon to treatment, the jury may well have agreed upon a lesser sentence or none at all. Cited in support of the rule that the court is under a duty to see that verdicts are in proper form are *State v. Wood,* 355 Mo. 1008, 199 S.W.2d 396 (1947) and *State v. Hurley,* 602 S.W.2d 838, (Mo.App.1980).

Gordon misreads the verdict. Plainly the jury agreed upon a sentence of 30 days but recommended probation, the latter on condition that probation include treatment. This appendage to the verdict was nothing more than a suggestion for probation on condition. The cases have uniformly held that an expression of the jury relative to probation amounts to no more than a recommendation for leniency which, in turn, is to be disregarded as surplusage. *State v. Churchill,* 299 S.W.2d 475 (Mo.1957), *State v. Keck,* 389 S.W.2d 816 (Mo.1965); *State v. Merriett,* 564 S.W.2d 559 (Mo.App.1978).

*State v. Wood* and *State v. Hurley,* supra, relied on by Gordon, are of collateral significance but do not require the conclusion that Gordon suffered prejudice in this case. The verdict in *Wood* was "2 years with clemency" and in *Hurley,* "not less than 150 years or more than life imprisonment." In each case, the verdict was not accepted and the jury was returned to the jury room with the instructions and verdict forms. On appeal it was contended the verdict first returned amounted to unauthorized punishment thereby requiring the court to assess punishment. The opinions rejected the contention holding the procedure followed to have been proper on the ground that the court has a duty to see that verdicts returned by juries are in the necessary form.

In the present case, that portion of the jury verdict referring to probation and treatment was not in proper form because probation is not a subject for jury consideration. Had the trial court here have refused to accept the verdict and returned the jury for additional deliberation, a preferable procedure, there would have been no error as *Wood* and *Hurley* hold. It does not, however, follow that acceptance of an imperfect verdict necessarily results in prejudice to the defendant or in reversable error. If, as the authorities cited hold, a recommendation for leniency may be disregarded as surplusage, that species of imperfection in a verdict engenders no prejudice to the defendant and does not constitute reversible error. Despite Gordon's argument to the contrary, we find no basis here to conclude that the imperfect verdict demonstrated an intention by the jury that Gordon serve no sentence or a sentence of less than 30 days, or that he suffered prejudice when the trial judge accepted the verdict as returned. It also follows, of course, that neither a manifest injustice or a miscarriage of justice occurred.

In two related points, appellant focuses on identification evidence given by the girl, Bolton, and by a police officer, one West. Some facts relative to the arrest of Gordon are necessary to an understanding of the issue. When Bolton furnished the license number of the car in which the partially nude man in the parking lot was seated, a record check supplied Gordon's name and address. The police then went to the residence with Bolton for the purpose of seeking the suspect. They conceived a plan whereby one officer would attempt to have Gordon come outside the house while Bolton, seated in a car some distance away, would make the identification. Action was taken accordingly, but Bolton was uncertain about the identity.

Despite the failure of Bolton to say Gordon was the man she had seen in the parking area of the shopping center, the police arrested Gordon and took him to the police station. There, they positioned Gordon behind a two-way mirror where Bolton could have a close view of Gordon without being seen herself. Bolton then made a positive identification of Gordon. She also identified him at trial and testified, without objection by the defense, to the details of identification of Gordon in the show up. Also without objection, Officer West testified in confirmation of the identification made by Bolton at the police station.

The arrest of Gordon for a misdemeanor, not committed in the presence of the offi-

cers and without a warrant was illegal. *State v. Caffey,* 436 S.W.2d 1 (Mo.1969). Bolton's testimony as to her identification of Gordon in the show up at the police station was therefore inadmissible because it was a direct product of the illegal arrest. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). So, too, was the supportive testimony of Officer West, not only because of the illegal arrest but because Bolton's identification had not been challenged. *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972).

Based on the foregoing, Gordon contends the admission of the testimony of Bolton and West was plain error prejudicial to his case and resulting in manifest injustice. The point fails on practical and elementary grounds.

In his opening statement, presented before any evidence was adduced by the state, Gordon's attorney addressed the jury as follows:

> "Jim Gordon was at K-Mart on Thursday, June 18th. He saw Melanie Bolton come down to K-Mart, look at him inquisitively and leave. * * * Jim Gordon is at K-Mart. Melanie Bolton is at K-Mart. The singular issue is what did she see him do."

In his own testimony, Gordon affirmed what had been described in opening statement, acknowledged his presence in his car at the shopping center, affirmed the presence of Bolton in the next car and recalled she had stared at him in a curious way. Thus, identification of Gordon as the man seen by Bolton in the parking lot was never an issue in the case. The fact in controversy was whether Gordon had exposed himself as Bolton testified or had merely been sitting in his car as Gordon related. The admission of evidence as to pre-trial identification was undoubtedly error but that error could scarcely have prejudiced Gordon where the evidence went to a fact not in controversy. We have no hesitancy in concluding that the error resulted in neither manifest injustice nor a miscarriage of justice.

In his final point, Gordon urges that a new trial be ordered on the ground that his appointed attorney performed ineffectively in preparation and trial of the case. In support of the contention, Gordon points out that the attorney had little working knowledge of criminal law or trial practice, he failed to raise the issue of Gordon's illegal arrest, he failed to object at trial to evidence which was not admissible or to the imperfect jury verdict, he failed to preserve various trial errors in a motion for new trial and he did not call up for hearing and did not argue the new trial motion which was filed.

Under other points of this opinion, several aspects of the trial which relate to the conduct of the defense have been discussed and, as to them, it cannot validly be contended that preservation of the errors by objection and a new trial motion would have produced any different result. Conversely, it is always possible by hindsight to plan a trial approach different from that adopted and fault counsel for ineptitude. Suffice it to say here that several instances of action or inaction by Gordon's attorney engender speculation as to his purpose or knowledge or both.

While the contention that the accused was not effectively represented at trial may be raised on direct appeal, *State v. Lumsden,* 589 S.W.2d 226, 230 (Mo. banc 1979), cert. denied 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980), the issue is normally left for disposition in a post-conviction proceeding under Rule 27.26 to vacate judgment and sentence. *State v. Larrabee,* 572 S.W.2d 250 (Mo.App.1978). Only in very exceptional cases will the circumstances warrant consideration of the point on direct appeal. [*State v. Hobbs,* 612 S.W.2d 387 (Mo.App.1981), a situation in which defense counsel had died precluding any evidence explanatory of trial strategy, and *State v. Moon,* 602 S.W.2d 828 (Mo.App. 1980), defendant demonstrably suspect of suffering from mental deficiency].

In the present case, despite circumstances which somewhat distinguish this record, we conclude, as did the court in *State v. Blackwell,* 459 S.W.2d 268 (Mo.

banc 1970), and for essentially the same reasons, that the procedure available under Rule 27.26 should be followed to resolve the alleged denial of effective assistance of counsel. With a record setting out the details of how the trial was conducted and the evidence presented in the interests of the defense, the trial court can prepare findings which, if adverse to Gordon, may be subjected to adequate review on appeal. We therefore decline, on the record before us, to review the issue of ineffective assistance of counsel.

The judgment is affirmed.

All concur.